**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO: 19-cv-81707-MIDDLEBROOKS/Brannon

ORANGE & BLUE CONSTRUCTION, INC., *et. al.*,

      Plaintiffs,

v.

HDI GLOBAL SPECIALTY SE f/k/a
INTERNATIONAL INSURANCE
COMPANY OF HANNOVER SE,

      Defendant.

_____/

**<u>ORDER</u>**

THIS CAUSE comes before the Court upon the Parties' Cross Motions for Summary

Judgment (either full or partial). (DE 67, DE 72; DE 94; DE 96). The Motions have been

extensively briefed. (DE 75; DE 81; DE 83; DE 84; DE 85; DE 87; DE 103; DE 106; DE 107; DE

109; DE 112; DE 113; DE 119; DE 122; DE 123; DE 124; DE 125). For the following reasons,

Plaintiff Orange & Blue Construction Inc.'s ("Orange & Blue") Motion is granted, Plaintiff

Amerisure Insurance Company's ("Amerisure") motion is granted, and Defendant HDI Global

Specialty SE f/k/a International Insurance Company of Hannover SE[1] ("HDI")'s Motion is denied.

## I.      BACKGROUND

Orange & Blue initiated this action seeking a declaration that HDI is obligated to defend

and indemnify Orange & Blue, and that HDI breached its contractual obligations by failing to do

so. (DE 1). This simple posture is complicated by a hierarchy of contractors, sub-contractors, and

---

[1] This Party has been referred to in briefing and previous Orders as "HGC," "International
Insurance," and "HDI." As I have referred to this Party as "HDI" in my previous Orders, I will
continue to do so in the interest of continuity.

insurers. At the top of this hierarchy is AGC, the general contractor hired to build the allegedly

deficient apartment building in question, Altis at Fairway Commons ("Altis" or the "Project").[2]

AGC then hired Orange & Blue as a subcontractor. (DE 97 ¶ 2; DE 108 ¶ 2; DE 110 ¶ 2). Orange

& Blue is insured by Amerisure. Orange & Blue then hired On the Ball Builders Inc. ("OTB") as

a sub-subcontractor. (DE 97 ¶ 5; DE 108 ¶ 5; DE 110 ¶ 5). OTB was hired primarily to finish

concrete work on the Altis building, including finishing the tunnel decks. (DE 97 ¶¶ 6, 7; DE 108

¶ 2; DE 110 ¶ 2). OTB then hired Jim Hevener ("Mr. Hevener") to complete all the work that OTB

was contracted to perform. (*See e.g.*, 97 ¶ 17; DE 108 ¶ 17; DE 110 ¶ 17).

Orange & Blue and OTB formalized their subcontract agreement through the signing of a

contract, which required OTB to purchase and maintain commercial general liability insurance.

(DE 68 ¶ 4; DE 76 ¶ 4; DE 78 ¶ 4). Pursuant to this subcontract, OTB obtained insurance from

HDI. (DE 68 ¶ 10; DE 76 ¶ 10; DE 78 ¶ 10). Although HDI and OTB entered into several policies,

the relevant policy is the 2016 Policy, which ran from July 29, 2016 to July 29, 2017 ("the 2016

Policy"). *Id.* The 2016 Policy provides, in pertinent part, that "[HDI] will pay those sums that the

insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property

damage' to which this insurance applies. [HDI] will have the right and duty to defend the insured

against any 'suit' seeking those damages. . . ." (DE 68 ¶ 11; DE 76 ¶ 11; DE 78 ¶ 11).

---

[2] While Amerisure does not dispute the statement that "Altman-Glenewinkel Construction LLC ("AGC") served as the general contractor for the construction of an apartment building known as Altis at Fairway Commons ("the project")" (DE 108 ¶ 1), Orange & Blue does dispute this statement, without any further explanation (DE 110 ¶ 1). However, Plaintiffs allege in the first paragraph of the "General Allegations" portion of this Complaint that "[AGC] served as the general contractor for the construction of a 398-unit apartment building located at 5500 North Military Trail, Boca Raton, Florida and known as Altis . . . ." (DE 37 ¶ 10). Therefore, this dispute may be in error.

In 2017, AGC initiated an action against Orange & Blue and others[3] in state court alleging damages as a result of deficient construction (the "Underlying Lawsuit"). (DE 37 ¶ 3; *AGC v. Orange & Blue Construction, Inc., et. al.*, case no. 502017-CA-001280-XXXX-MB, Palm Beach County Circuit Court for the 15th Judicial Circuit). This action is ongoing in state court. Thus far, Amerisure has been funding Orange & Blue's defense against AGC in the state court action, albeit under a reservation of rights. (DE 95-10). However, Orange & Blue is seeking a declaration in this action that HDI has an obligation to provide for Orange & Blue's defense and to indemnify it against any judgment AGC may obtain. Although Orange & Blue is insured by Amerisure and not HDI, Orange & Blue's position is that its subcontractor, OTB, took out policies with HDI naming Orange & Blue as an additional insured. Because Amerisure has an interest in obtaining a judgment finding that HDI (rather than Amerisure) had a duty to defend and indemnify Orange & Blue, I previously granted Amerisure's motion to intervene as a Plaintiff. (DE 33). HDI's position in this litigation is that it has no duty to defend or indemnify Orange & Blue, centering its argument on the fact that the allegedly defective construction work was performed by Mr. Hevener rather than OTB, which HDI argues is a breach of a condition precedent to coverage.

## II.     LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Genuine disputes are those in which the evidence is such that a reasonable jury could return a verdict for the non-movant." *Ellis v. England*, 432 F.3d 1321, 1325-26 (11th Cir.

---

[3] Orange & Blue Construction, Inc., Bbm Structural Engineers, Inc., Msa Architects, Inc., Gfa International, Inc, Construction Industry Solutions, Ara Engineering, Inc., Specialty Engineering Consultants, Inc., Tim Climer, Antierr Construction, Inc. (a/k/a Antierr Construction International Inc.), On The Ball Builders, Inc.,  and R.N. Iron Work, Inc.

2005). "For factual issues to be considered genuine, they must have a real basis in the record." *Id.*

at 1326 (internal citation omitted). "For instance, mere conclusions and unsupported factual

allegations are legally insufficient to defeat a summary judgment motion." *Id.* (internal citation

omitted). "Moreover, statements in affidavits that are based, in part, upon information and belief,

cannot raise genuine issues of fact, and thus also cannot defeat a motion for summary judgment."

*Id.* (internal citations omitted).

The movant "always bears the initial responsibility of informing the district court of the

basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any,' which it believes

demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)(1)(A)). "When the *nonmoving* party has the burden

of proof at trial, the moving party is not required to 'support its motion with affidavits or other

similar material *negating* the opponent's claim,' in order to discharge this 'initial responsibility.'"

*United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Ctys. in State of Ala.*, 941

F.2d 1428, 1437–38 (11th Cir. 1991). "Instead, the moving party simply may 'show'—that is,

point out to the district court—that there is an absence of evidence to support the nonmoving

party's case." *Id.* at 1438 (citation omitted). "Alternatively, the moving party may support its

motion for summary judgment with affirmative evidence demonstrating that the nonmoving party

will be unable to prove its case at trial." *Id.* (citation omitted). "If the moving party shows the

absence of a triable issue of fact by either method, the burden on summary judgment shifts to the

nonmoving party, who must show that a genuine issue remains for trial." *Id.* (citation omitted). "If

the nonmoving party fails to 'make a sufficient showing on an essential element of her case with

respect to which she has the burden of proof,' the moving party is entitled to summary judgment."

*Id.* (citation omitted). At the summary judgment stage, courts construe the facts in the light most favorable to the non-movant, and any doubts should be resolved against the moving party. *Davis v. Williams*, 451 F.3d 759, 761 (11th Cir. 2006); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

Although this summary judgment standard applies in duty to defend cases, these cases are ordinarily decided by a court as a matter of law. That is because "[t]he interpretation of an insurance contract is a question of law for the Court to decide." *Weitz Co. v. Trans. Ins. Co.*, No. 08-23183, 2009 WL 10669040, at *3 (S.D. Fla. May 21, 2009) (citing *Graber v. Clarendon Nat'l Ins. Co.*, 819 So. 2d 840, 842 (Fla. 4th DCA 2002)). The issue presented is whether the 2016 insurance policy between HDI and OTB requires the insurer, HDI, to defend and/or indemnify Orange & Blue in the underlying state court lawsuit.

## III.   DISCUSSION

"Under Florida law, an insurance provider's duty to defend an insured party 'depends solely on the facts and legal theories alleged in the pleadings and claims against the insured.'" *Stephens v. Mid-Continent Cas. Co.*, 749 F.3d 1318, 1323 (11th Cir. 2014) (quoting *James River Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270, 1275 (11th Cir. 2008)); *see also Scott, Blane, and Darren Recover, LLC v. Auto-Owners Ins. Co.,* 727 F. App'x 625, 631 (11th Cir. 2018) ("Under Florida law, an insurer's duty to defend 'arises from the 'eight corners' of the complaint and the policy.'" (quoting *Mid-Continent Cas. Co. v. Royal Crane, LLC*, 169 So. 3d 174, 182 (Fla. 4th DCA 2015))).

"The duty to defend 'arises when the relevant pleadings allege facts that fairly and potentially bring the suit within policy coverage.'" *Id.* (citing *Lawyers Title Ins. Corp. v. JDC (Am.) Corp.*, 52 F.3d 1575, 1580 (11th Cir. 1995); *U.S. Fire Ins. Co. v. Hayden Bonded Storage*

*Co.*, 930 So. 2d 686, 691 (Fla. 4th DCA 2006)). "'Thus, an insurer is obligated to defend a claim even if it is uncertain whether coverage exists under the policy.'" *Id.* (quoting *Mid-Continent Cas. Co. v. Am. Pride Bldg. Co.*, LLC, 601 F.3d 1143, 1149 (11th Cir. 2010)) (quoting *First Am. Title Ins. Co. v. Nat'l Union Fire Ins. Co.*, 695 So. 2d 475, 476 (Fla. 3d DCA 1997)). "'When the actual facts are inconsistent with the allegations in the complaint, the allegations in the complaint control in determining the insurer's duty to defend.'" *Id.* (quoting *Jones v. Florida Ins. Guar. Ass'n, Inc.*, 908 So. 2d 435, 443 (Fla. 2005)). Accordingly, "there generally is no need for a declaratory action in respect to the insurer's obligation to defend." *Higgins v. State Farm Fire & Cas. Co.*, 894 So. 2d 5, 10 (Fla. 2004).

"Florida law places on the insured the burden of proving that a claim against it is covered by the insurance policy." *LaFarge Corp. v. Travelers Indem. Co.*, 118 F.3d 1511, 1516 (11th Cir. 1997). "[A]n insurer has no duty to defend a suit against an insured if the complaint upon its face alleges a state of facts that fails to bring the case within the coverage of the policy." *McCreary v. Florida Residential Prop. & Cas. Joint Underwriting Ass'n*, 758 So.2d 692, 695 (Fla. 4th DCA 1999) (quotation omitted). "But if the relevant pleadings allege facts that '***fairly and potentially*** bring the suit within policy coverage,' the insurer's duty to defend is triggered." *Scott, Blane, and Darren Recovery*, 727 F. App'x at 631-32 (quoting *Lime Tree Village Cmty. Club Ass'n, Inc. v. State Farm Gen. Ins. Co.*, 980 F.2d 1402, 1405 (11th Cir. 1993)) (emphasis added). "Moreover, the insurer must defend the entire lawsuit, even if the complaint 'alleges facts partially within and partially outside the scope of coverage.'" *Addison Ins. Co. v. 4000 Island Blvd. Condo. Ass'n*, 721 F. App'x 847, 854 (11th Cir. 2017) (quoting *Trizec Prop., Inc. v. Biltmore Constr. Co., Inc.*, 767 F.2d 810, 811-12 (11th Cir. 1985)). "Any doubt about whether an insurer is under the duty to

defend is resolved in favor of the insured." *Scott, Blane, and Darren Recovery*, 727 F. App'x at 632.

### 1. Defendant's Motion for Summary Judgment

#### a. Lack of Coverage Under the 2016 Policy

Defendant HDI argues that summary judgment should be granted in its favor as Plaintiffs are seeking to enforce the incorrect HDI policy. Plaintiffs Orange & Blue and Amerisure have consistently alleged that only the **2016** Policy between HDI and OTB obligates HDI to defend and indemnify Orange & Blue. However, HDI contends that only the **2015** Policy is controlling. (DE 97 ¶ 35). The Parties agree that OTB submitted its last invoice on July 18, 2016, more than a month before coverage under the 2016 policy began. (DE 97 ¶ 31). Thus, HDI argues that OTB clearly did not do any work, defective or otherwise, within the period of coverage for the 2016 policy. Failure to do work within the coverage period is significant, Defendant contends, because the 2016 Policy included a Prior Completed Work Exclusion which provided that "[t]his insurance does not apply to . . . 'property damage' . . . included within the 'Products Completed Operations Hazard' and arising out of 'your work' completed prior to [July 29, 2016]." (DE 37-2 at 42). Thus, under this language, the 2016 Policy would not cover any work that was not "completed" within the coverage period.

Florida law is clear that "[t]he potential for coverage is triggered when an 'occurrence' results in 'property damage.' There is no requirement that the damages 'manifest' themselves during the policy period. Rather, it is the damage itself which must occur during the policy period for coverage to be effective." *Trizec Properties, Inc. v. Biltmore Const. Co., Inc.*, 767 F.2d 810, 813 (11th Cir. 1985). Therefore, the fact that the property damage which OTB allegedly caused was *discovered* within the 2016 Policy period is irrelevant, as only the damage *incurred* within the

period is covered. In determining whether damages were incurred within the policy period, the question is whether the complained of harm could have "at least marginally and by reasonable implication" occurred within the Policy period *based on the language of the underlying complaint*. *Klaesen Bros., Inc. v. Harbor Ins. Co.*, 410 So. 2d 611, 613 (Fla. 4th Dist. App. 1982). Thus, the actual facts are irrelevant; only the language of the state court complaint controls. This is because a duty to defend does not require *proof* of coverage, but instead is triggered "when the complaint alleges facts that fairly and potentially bring the suit within policy coverage." *State Farm Fire & Cas. Co. v. CTC Dev. Corp.*, 720 So.2d 1072, 1077 n. 3 (Fla.1998).

In its underlying lawsuit against Orange & Blue, AGC does not specifically allege when the supposed property damage occurred. (DE 37-5). The lawsuit was filed on February 1, 2017, and thus the damage could have occurred any time prior to that date. *Id.* Therefore, based on the language in the underlying state court complaint, the damage *could have* occurred within the 2016 Policy period.

Further, even if the damage did not occur within the 2017 period, "there is a difference between a claim for the costs of repairing or removing defective work, which is not a claim for 'property damage,' and a claim for the costs of repairing damage caused by the defective work, which is a claim for 'property damage.'" *U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So. 2d 871, 889 (Fla. 2007). Thus, damage which was *caused* by OTB's allegedly defective work would be covered by the 2016 Policy if that damage occurred within period. Therefore, I find that summary judgment is not appropriate on this basis as the language of the underlying complaint leaves open the possibility that property damage may have occurred within the 2016 Policy period, either because the actual work was performed within the policy period, or because the work was performed outside of the policy period but caused damage within the policy period.

### B.  Failure to Comply with a Condition Precedent to Coverage

As an alternative basis for summary judgment, HDI argues that even if the 2016 Policy covers the harm complained of in the underlying action, HDI is not required to defend Orange & Blue because a condition precedent to coverage under the 2016 Policy was not fulfilled. Specifically, HDI contends that all of the work which OTB was contracted to perform was in fact performed by a sub-contractor, Mr. Hevener (making Mr. Hevener, in relation to AGC, a sub-sub-subcontractor). The 2016 Policy provides for certain requirements which must be fulfilled for policy coverage to apply to sub-contractors. OTB was required to, among things, "maintain records of all work performed for 10 years and ninety days following the expiration of the policy." (DE 97 ¶ 38; DE 97-8). However, the undisputed facts show that OTB failed to comply with this requirement as William Shendell, the principal for OTB, threw away "the entire file" of relevant documents because he was "angry." (DE 97 ¶ 32). Therefore, based on this and other failures to satisfy necessary conditions precedent, Defendant argues the 2016 Policy has no application to the underlying AGC lawsuit, as the only work that was "performed" by OTB was, in fact, done by an independent contractor who was not covered by the policy.

As previously discussed, an insurance provider's duty to defend an insured party "depends solely on the facts and legal theories alleged in the pleadings and claims against the insured." *James River Ins. Co.*, 540 F.3d at 1275 (emphasis added) (internal quotation omitted). There is no discussion in the underlying complaint of the requirements that OTB must meet for the 2016 Policy to extend to an independent contractor. (See DE 37-5). Thus, applying this rule, non-performance of a condition precedent would be irrelevant to a determination of coverage because it is based on extrinsic evidence rather than the language of the underlying Complaint. *See Adv. Sys., Inc. v.*

*Gotham Ins. Co.*, 272 So. 3d 523, 528–29 (Fla. 3d Dist. App. 2019) (finding that "the trial court erred in relying on extrinsic evidence to determine that a duty to defend did not arise below.").

However, Defendant argues that exceptional circumstances should allow the introduction of extrinsic evidence. The Florida Supreme Court has held that "there are some natural exceptions" to the prohibition on extrinsic evidence in a duty to defend determination "where an insurer's claim that there is no duty to defend is based on factual issues that would not normally be alleged in the underlying complaint . . . In such circumstances, we believe the courts may entertain a declaratory action seeking a determination of a factual issue upon which the insurer's duty to defend depends." *Higgins v. State Farm Fire and Cas. Co.*, 894 So. 2d 5, 10 (Fla. 2004). However, this exception is a narrow one; the Eleventh Circuit, applying Florida law, has held that "such cases are best viewed 'as exceptional cases in which courts have crafted an equitable remedy when it is ***manifestly obvious to all involved*** that the actual facts placed the claims outside the scope of coverage.'" *Stephens v. Mid-Continent Cas. Co.*, 749 F.3d 1318, 1322–24 (11th Cir. 2014) (quoting *First Specialty Ins. Corp. v. 633 Partners*, \*1324 Ltd., 300 Fed. Appx. 777, 786 (11th Cir.2008)) (emphasis added).

In *Nateman v. Hartford*, the Florida Third District Court of Appeals considered whether an insurance provision excluding coverage of independent contractors should be considered in determining the duty of defend, despite being extrinsic to the underlying complaint. *See Nateman v. Hartford Cas. Ins. Co.*, 544 So. 2d 1026, 1028 (Fla. 3d Dist. App. 1989). The Court held that it should be considered, but based their holding heavily on the *unambiguous* nature of the evidence. *Id.* The Court stated that, the contract "was in no way ambiguous and left no room for doubt but that independent contractors were not covered by the insurance contract's provision." *Id.* at 1027. The "the facts [were] clear" that the individual seeking coverage "clearly held the status of an

10

independent contractor" based on "plain and unambiguous terminology," within the contract, making it "unassailably definite" that the contractor was not covered under the contract. *Id.* Therefore, the Court found that the independent contractor exclusion should be considered as "[t]he insurer is not obligated to provide a defense for a stranger merely because the plaintiff alleges that the defendant is an insured or alleges facts which, if true, would make the defendant an insured." *Id.* at 1027.

It is clear, therefore, that this is a narrow exception which should be employed only when the uncontroverted evidence makes clear that the defense would otherwise be provided to a "stranger" to the contract. *See also Nationwide Mut. Fire Ins. Co. v. Keen*, 658 So.2d 1101, 1103 (Fla. 4th DCA 1995) (permitting consideration "if uncontroverted evidence places the claim outside of coverage"). This exception does not change the foundational principle that an insurer's duty to defend extends not just to claims that are well founded on the merits, but also to claims that are clearly unfounded. *See, e.g., Baron Oil Co. v. Nationwide Mut. Fire Ins. Co.*, 470 So.2d 810, 814 (Fla. 1st DCA 1985) ("the duty to defend continues even though it is ultimately determined that the alleged cause of action is groundless and no liability is found within the policy provisions defining coverage").

Here, it is far more ambiguous that the condition precedent excludes coverage. First, Plaintiffs argue that Mr. Hevener was not an independent contractor whose work was excluded from coverage, but instead was an employee of OTB. Under Florida law, if a party is hired and merely directed as to the result to be obtained, the party is an independent contractor; however, if the party securing the services controls the means by which the task is accomplished, the party performing the service is an employee. *Marcoux v. Circle K Stores, Inc.*, 773 So. 2d1270, 1271 (Fla. 4th DCA 2000) ("[T]he [Florida [S]upreme [C]ourt determined that if the one securing the

services controls the means by which the task is accomplished the one performing the services is an employee. If not, he is an independent contractor."). Florida courts look to many factors to aid in determining whether a person is an employee or an independent contractor including, but not limited to: (1) the extent of the employer's control over the details of the work; (2) whether the person employed is engaged in a distinct occupation or business; (3) the kind of occupation involved, and whether the work is done under the direction of the employer or by a specialist without supervision; (4) the skill required in the particular occupation; (5) whether the employer supplies the instrumentalities, tools, and the place of work; (6) the length of time the person is employed; and (7)whether the work is part of the employer's regular business. *See Carroll v. Kencher, Inc.*, 491 So. 2d 1311, 1312 (Fla. 4th DCA 1986).

Orange & Blue alleges, and Defendants do not dispute, that Mr. Shendell held the requisite general contractor's license for OTB, and Mr. Hevener worked under that license. (DE 80-1, p 23). OTB paid Mr. Hevener's payroll. (DE 80-1, p. 21). Further, although Mr. Shendell testified that Mr. Hevener had a company named Sue's Concrete Finishing, no such company exists in the Florida Department of State records. *Id.* It is unnecessary for me to conclude whether, based on these facts, Mr. Hevener is or is not an independent contractor. However, it is clear that, unlike in *Reynolds*, it is not "unassailably definite" that Mr. Hevener was an independent contractor and thus that his work was excluded from coverage under the 2016 Policy.

Further, Plaintiffs argue that the language of the 2016 Policy is ambiguous. The Contract provides that:

> Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:
> a) As if each Named Insured were the only Named Insured; and
> b) Separately to each insured against whom claim is made or 'suit' is brought.

Accordingly, Amerisure argues that "any failure of [OTB] to comply with the Endorsement should not apply to Orange & Blue, which had no involvement in the requirements as to [OTB] as [OTB], and not Orange & Blue, allegedly retained an independent contractor for which the requirements kick in; Orange & Blue did not retain an independent contractor and thus the requirements did not apply to it." (DE 107 at 15-16). Again, it is not necessary that this argument will succeed, but only that it creates ambiguity as to whether the condition precedent is satisfied. Therefore, I find that in the absence of extrinsic evidence which makes it "obvious" that no duty to defend is owed, the duty to defend determination should be made exclusively under the eight-corners rule, and thus should not take into account the alleged non-occurrence of a condition precedent.

## 2. Plaintiffs' Motions for Summary Judgment

### A. Duty to Defend based on the "Eight Corners Rule"

As I have determined that extrinsic evidence should not be considered, I now focus my analysis on the "Eight Corners," which states that "Under Florida law, an insurer's duty to defend 'arises from the 'eight corners' of the complaint and the policy.'" *Scott, Blane, and Darren Recover, LLC v. Auto-Owners Ins. Co.*, 727 F. App'x 625, 631 (11th Cir. 2018) (*quoting Mid-Continent Cas. Co. v. Royal Crane, LLC*, 169 So. 3d 174, 182 (Fla. 4th DCA 2015)). Therefore, my analysis is confined to the 2016 Policy and the AGC Complaint. Notably, HDI does not substantively contest that Orange & Blue is an additional insured, that Orange & Blue sued and has been defending against claims involving alleged property damage covered under HDI's insurance policy, or that Orange & Blue has failed, to date, to provide a defense. Nonetheless, I turn now to the merits' of Amerisure and Orange & Blue's Motions for Summary Judgment as to HDI's duty to defend.

In the underlying state court case, AGC alleges in its Third Amended Complaint that it entered into a contract with Orange & Blue in which Orange & Blue agreed to provide "concrete/masonry shell-related labor, services and/or material for the Project." (DE 35-5 ¶ 42). AGC alleged that Orange & Blue, through its agents, servants and employees, failed to properly perform its work on the Project free from defects and/or deficiencies, failed to comply with the requirements of the applicable building codes and the approved construction plans and specifications, and that AGC suffered damages. (*See* DE 37-5 ¶ 50). I find that these allegations fairly and potentially trigger HDI's duty to defend.

### B. Damages

HDI argues that if it has a duty to defend Orange & Blue (which I have determined it does), Orange & Blue is still not entitled to reimbursement for attorney's fees expended in the underlying litigation because Amerisure has a primary duty to defend. As Florida's Second District Court of Appeal has stated: "If the insurer breaches its duty to defend, it—like any other party who fails to perform its contractual obligations—becomes liable for all damages naturally flowing from the breach." *Carrousel Concession, Inc. v. Fla. Ins. Guar. Ass'n*, 483 So. 2d 513, 516 (Fla. 3d DCA 1986). However, the amount of damages it is entitled to is not capable of being calculated at this point and, by extension, conducting discovery on these issues would be unrealistic until the underlying lawsuit is resolved. Accordingly, in the interest of judicial efficiency and economy, the issue of what damages Orange & Blue is entitled to for HDI's breach is stayed pending the resolution of the underlying action.

### C. Amerisure's Motion for Summary Judgment

I have previously addressed the issues which are argued by both Amerisure and Orange & Blue in their respective motions, namely those related to the duty to defend. In Amerisure's

Motion, Amerisure adds more nuance to the issue of apportionment of damages. Specifically, Amerisure states that "Orange & Blue is entitled to all costs it incurred in its defense in the AGC Lawsuit.  Likewise, Orange & Blue has transferred all rights to Amerisure to recover fees,  costs and  expenses  paid  by  Amerisure  to  defend Orange & Blue in the AGC Lawsuit, which should have been borne by HGS." (DE 94 at 17). Accordingly, Amerisure seeks a finding that HDI must "must reimburse Amerisure $643,420.66 for all attorneys' fees, costs and expenses paid in defending Orange & Blue in the AGC Lawsuit, and reimburse Orange & Blue for the amount it has incurred in its defense in the AGC Lawsuit." (DE 94 at 18). As the issue of damages has been stayed, I will also stay the issue of apportionment of damages. Accordingly, the issue as to whether Orange & Blue is entitled to hire separate counsel to defend itself is also stayed.

Amerisure also raises the argument that HDI's delayed filing of an Answer to Plaintiff's Amended Complaint warrants the entry of summary judgment. As summary judgment has been entered on the merits, I need not consider this argument.[4]

### D.  Stay of Indemnification

As for indemnification, the issue of whether HDI should indemnify Orange & Blue for any judgment entered against it in the Underlying Lawsuit is not ripe for adjudication. The duty to indemnify issue will only become ripe to adjudicate upon resolution of the underlying action. *See, e.g.*, *Mid-Continent Cas. Co. v. Delacruz Drywall Plastering & Stucco, Inc.*, 766 F. App'x 768, 770 (11th Cir. 2019) ("We agree with these cases and the district court's conclusion that MCC's duty to indemnify Delacruz is not ripe for adjudication until the underlying lawsuit is resolved."). *See also Allstate Ins. Co. v. Emp'rs Liab. Assur. Corp.*, 445 F.2d 1278, 1281 (5th Cir. 1971) ("no

---

[4] Further, I have already found that this delay constituted excusable neglect and accordingly declined to award sanctions. (DE 104).

action for declaratory relief will lie to establish an insurer's [priority] . . . until a judgment has been rendered against the insured since, until such judgment comes into being, the liabilities are contingent and may never materialize"). Accordingly, the issue of indemnification shall be stayed pending the resolution of the Underlying Lawsuit.

## IV.    CONCLUSION

In conclusion, HDI has a duty to defend Orange & Blue in the Underlying Lawsuit and HDI breached that duty. Orange & Blue and/or Amerisure are entitled to damages naturally flowing from this breach. Because the Underlying Lawsuit is ongoing, and Orange & Blue's claimed damages relate to fees incurred in defending the Underlying Lawsuit, I will stay the issue of damages resulting from HDI's breach until the Underlying Lawsuit is resolved. Finally, under Eleventh Circuit precedent, the issue of indemnification is not ripe for adjudication until the Underlying Lawsuit is completed. Thus, the issue of indemnification shall also be stayed pending the resolution of the Underlying Lawsuit. Accordingly, it is hereby

**ORDERED and ADJUDGED** that:

1. Plaintiff Orange & Blue's Motion for Partial Summary Judgment (DE 67) is **GRANTED.**

2. Plaintiff Amerisure's Motion for Partial Summary Judgment (DE 94) is **GRANTED.**

3. Defendant HDI's Motion for Summary Judgment (DE 96) is **DENIED.**

4. The issue of (1) damages related to HDI's breach of its duty to defend; and (2) indemnification **ARE STAYED** pending the resolution of the underlying action, *AGC v. Orange & Blue Construction, Inc., et. al.*, case no. 502017-CA-001280-XXXX-MB, Palm Beach County Circuit Court for the 15th Judicial Circuit.

5. The Parties **SHALL FILE** a Joint Status Report every ninety days from the date of this Order, apprising the Court of the status of the Underlying Lawsuit.

6.  Either Party may move to lift the stay upon resolution of the Underlying Lawsuit. Such a motion should be accompanied by a Status Report regarding the remaining issues in this litigation and whether they may be resolved on the papers and without a jury.

7.  The Clerk of Court shall administratively **CLOSE THIS CASE.**

8.  The Clerk shall also **DENY** any pending motion **AS MOOT.**

**SIGNED** in Chambers, at West Palm Beach, Florida, this 25th day of August, 2020.

_____

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE